UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

CIVIL ACTION NO. 3:23-CV-00078-EBA

MARY JARRELL,                                                                                      PLAINTIFF,

V.                       **MEMORANDUM OPINION & ORDER**

MARTIN O'MALLEY,
*Commissioner of Social Security*,                                             DEFENDANT.

\*\*\* \*\*\* \*\*\* \*\*\*

### INTRODUCTION

Plaintiff, Mary Jarrell, appeals the Social Security Commissioner's denial of her applications for Disability Insurance Benefits under Title II and Supplemental Security Income (SSI) under Title XVI of the Social Security Act. [R. 13 at pg. 5].[1] Jarrell alleges that the Administrative Law Judge (ALJ) erred when determining her residual functional capacity.[2] [*Id.*]. Jarrell and the Commissioner filed briefs in support of their respective positions, [R. 13; R. 15; R. 17], so this matter is ripe for review. For the reasons below, the Court will **DENY** Jarrell's motion to enter judgment under sentence four of 42 U.S.C. § 405(g), [R. 13], and affirm the Commissioner's decision.

---

[1] Plaintiff's Opening Brief was 28 pages in length. [*See* R. 13]. Pursuant to General Order No. 22-15, Plaintiff's brief was not to exceed 15 pages. [*See* R. 4 at pg. 4]. Jarrell later filed a Motion for Leave to File Excess Pages Nunc Pro Tunc to explain that she had mistakenly relied upon the page limitations set out in LR 7.1(d) when she prepared her brief and therefore moved for leave to properly file her Opening Brief. [R. 16]. Plaintiff's motion also indicated that the Commissioner did not oppose the motion. [*Id.*]. Accordingly, the Court will grant the Plaintiff's motion and has considered the entirety of Jarrell's Opening Brief in this Memorandum Opinion & Order.

[2] Residual functional capacity "is the most an adult can do despite his or her limitation(s)." 84 Fed. Reg. 22,924, 22,925 (May 20, 2019).

**FACTS AND PROCEDURAL HISTORY**

Mary Jerrell is approximately 54 years old. [R. 12 at pg. 33]. The records for this case indicate that she has at least a high school diploma and previously worked as a home attendant.[3] [*Id.* at pgs. 32–33]. In 2011, a patient fell on Jarrell's left knee, resulting in Jarrell suffering a meniscus tear. [*Id.* at pg. 575]. Thereafter, despite having numerous procedures done, her knee and back pain continued to worsen. [R. 13 at pgs. 8–13]. Further compounding her physical ailments were several mental health impairments from which she suffered, including anxiety disorders and depression. [*Id.* at pgs. 6–8]. These impairments made work too unbearable for Jarrell, and, eventually, she ceased work. [R. 12 at pg. 27].

On July 1, 2020, Mary Jarrell filed a Title XVI application for Supplemental Security Income. [R. 12 at pg. 22]. On July 7, 2020, Jarrell protectively filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act. [*Id.* at pg. 22]. In both applications, Jarrell alleges disability beginning August 8, 2018. [*Id.*]. However, Jarrell's Title II application for disability benefits was denied—both initially and on reconsideration. [*Id.* at pgs. 19-39, 117–120]. Thereafter, she requested a hearing before an ALJ, which was held on January 21, 2022. [*Id.* at pg. 22].

Following the hearing, the ALJ Kendra S. Kleber ("Kleber" or "ALJ Kleber") found that Jarrell was not under a disability within the meaning of Title II of the Social Security Act. [*Id.* at pg. 25]. Jarrell subsequently requested a review of ALJ Kleber's decision by the Social Security Administration's Appeals Counsel, but to no avail. [*Id.* at pgs. 6–10, 372–74]. Because the Appeals Counsel declined review, ALJ Kleber's decision became the Commissioner's final decision, which

---

[3] A home attendant "provides care for elderly, convalescent, or handicapped persons in [the] patient's home." DICTIONARY OF OCCUPATIONAL TITLES § 354.377-014 (4th ed., rev. 1991), *available at* https://www.dol.gov/agencies/oalj/PUBLIC/DOT_REFERENCES/DOT03A.

is subject to review. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981. Now, having exhausted all administrative remedies, Jarrell seeks judicial review of the ALJ's decision. [R. 1].

STANDARD OF REVIEW & FRAMEWORK FOR DISABILITY DETERMINATIONS

A.

Administrative Law Judges must "follow agency rules and regulations." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). A court reviewing the Commissioner's conclusions must affirm unless it determines that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). "Substantial evidence . . . is 'more than a mere scintilla of evidence'" and "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 217 (1938)). Because the "threshold for such evidentiary sufficiency is not high," *id.*, the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing U.S.C. § 405(g)). It is important to note that where, as here, the Appeals Council denies review of an ALJ's decision, that decision becomes the final decision of the Commissioner. *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010).

It has been observed that, because "[t]he Social Security hearing system is 'probably the largest adjudicative agency in the western world,'" the "need for efficiency" in resolving appeals regarding agency decisions is "self-evident." *Heckler v. Campbell*, 461 U.S. 458, 461 n. 2 (1983) (internal citations omitted). Accordingly, a reviewing court owes the Commissioner's decision great deference. In conducting its review, a court may not try the case *de novo*, resolve conflicts

in the evidence, or decide questions of credibility. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)). Consequently, an administrative decision is not subject to reversal even if substantial evidence would have supported the opposite conclusion. *See id.* at 714 (quoting *Bass*, 499 F.3d at 509). In other words, even if the Court would have resolved the factual issues differently, the ALJ's decision must stand if supported by substantial evidence. *Id.*; *see also Tyra v. Sec'y of Health and Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990). That said, a reviewing court may consider evidence not referenced by the Administrative Law Judge. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).

**B.**

Administrative Law Judges are tasked with conducting a five-step analysis to determine whether a person is disabled within the meaning of Title II. 20 C.F.R. § 404.1520(a)(4). The five steps are as follows:

(i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if

>you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520(a)(4).

Generally, the burden of proof rests with the person claiming benefits. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). Thus, Jarrell bears the burden of establishing the severity of her impairments and that she had greater limitations than the ALJ imposed. *Her v. Commissioner of Soc. Sec.,* 203 F.3d 388, 391 (6th Cir. 1999) (noting that "the burden of proof lies with the claimant at steps one through four of the [sequential evaluation] process"); *Higgs v. Bowen,* 880 F.2d. 860, 863 (6th Cir. 1988) (noting that the claimant has the burden to "prove the severity of her impairments"). However, if the ALJ reaches the fifth step of the analysis, the burden shifts to the Commissioner to demonstrate that jobs exist within the national economy that can align with the claimant's residual functional capacity, age, education, and past work experience. *Her*, 203 F.3d at 391.

## THE ALJ'S FINDINGS

At Step One, ALJ Kleber found that Jarrell has not engaged in substantial gainful activity since August 8, 2018. [R. 12 at pg. 27]. At Step Two, Kleber found that Jarrell suffers from several severe impairments, including lumbar degenerative disc disease, polyneuropathy, sacroiliac dysfunction, diabetes, obesity/deconditioning, depression, and anxiety. [*Id.*]. At Step Three, Kleber determined that Jarrell's impairments did not meet or medically equal the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. [*Id.*]. In determining Jarrell's RFC, ALJ Kleber made the following findings:

>Ms. Jarrell has the [RFC] to perform a range of medium work as defined in 20 C.F.R. 404.1567(c) and 416.967(c). Specifically she is able to lift or carry up to 20 to 50 pounds occasionally or up to 10 to 25 pounds if lifting frequently. She is able to stand or walk for 60 minutes at one time, but otherwise without limitation. She

is able to sit without limitation. She is able to frequently climb stairs and ramps, but not climb ladders or scaffolds. She is frequently able to stop and occasionally able to kneel, crouch or crawl. She is able to tolerate occasional exposure to vibration and less than occasional exposure to unprotected heights or uncovered industrial machinery. The work she can perform does not involve commercial driving or exposure to jarring, bouncing or jerking. She is able to understand, remember and perform simple tasks, defined as those which can be learned after short demonstration or within 30 days. She is able to maintain attention and concentration for simple tasks over 2-hour periods with regular breaks. She is able to tolerate occasional interaction with the public. She is able to tolerate superficial interaction with coworkers; superficial is defined as interaction for the purpose of greeting, serving or receiving instructions. She is able to handle demands and changes in the work setting.

[*Id.* at pg. 29].

Based on Jarrell's RFC and accompanying findings of fact, ALJ Kleber concluded at Step Four that Jarrell was unable to perform any past relevant work. [*Id.* at pgs. 32–33]. However, at Step Five, Kleber found that Jarrell is "not disabled"—and thus ineligible for benefits under Title II—because "she is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." [*Id.* at pgs. 33–34]. In making that determination, she relied on a vocational expert who testified that the following work existed in significant numbers such that Jarrell could perform: (1) hand packager, (2) hospital cleaner, and (3) cleaner II.[4] [*Id.* at pg. 34].

## ANALYSIS

In her appeal, Jarrell asks this Court to review three issues concerning the Commissioner's denial of benefits: (1) whether ALJ Kleber properly considered Jarrell's moderate limitations in

---

[4] A "cleaner II" has the following job responsibilities: "Cleans interiors and exteriors of transportation vehicles, such as airplanes, automobiles, buses, railroad cars, and streetcars: Cleans interior of vehicle, using broom, cloth, mop, vacuum cleaner, and whisk broom. Cleans windows with water, cleansing compounds, and cloth or chamois. Replenishes sanitary supplies in vehicle compartments. Removes dust, grease, and oil from exterior surfaces of vehicles, using steam-cleaning equipment, or by spraying or washing vehicles, using spraying equipment, brush or sponge. May polish exterior of vehicle. May fumigate interior of vehicle, using fumigating gases or sprays." DICTIONARY OF OCCUPATIONAL TITLES § 919.687-014 (4th ed., rev. 1991), *available at* https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOT09A.

adaptation and concentration, persistence, and pace ("CPP"), as set forth in the psychiatric review technique finding; (2) whether ALJ Kleber properly supported her determination of Jarrell's residual functional capacity ("RFC")—as to both her mental and physical limitations—with substantial evidence; and (3) whether ALJ Kleber erred by constructing an impermissibly vague residual functional capacity. [R. 13].

In response, the Commissioner contends that ALJ Kleber "supported her decision with substantial evidence and applied the correct legal standards." [R. 15 at pg. 1]. Furthermore, the Commissioner argues that, because Kleber's decision(s) regarding Jarrell's RFC and determination of ineligibility are supported by substantial evidence, Jarrell's "arguments to the contrary are meritless." [*Id.* at pg. 1]. Moreover, the Commissioner argues that Jarrell is effectively asking this Court to "reweigh the evidence and substitute its own judgment [for that of Kleber's], which the Court may not do." [*Id.* at pgs. 12–13].

## A.

Jarrell first argues that, in establishing her RFC, ALJ Kleber failed to comply with SSR 96-8p, SSR 85-16, and SSR 85-16. [R. 13 at pgs. 15–19]. Specifically, Jarrell contends that "[w]hile the ALJ found [her] to have moderate limitations in her ability to adapt and manage herself, the RFC does not contain any limitations accounting for such moderate limitations" as is required by SSR 96-8p and SSR 85-16. [*Id.* at pgs. 15–16]. Likewise, she also points to Kleber's failure—despite finding her to have moderate limitations in CPP at Step Three—to account for such limitations in her RFC as required by SSR 96-8p and SSR 85-16. [*Id.* at pgs. 16–18].

Jarrell also asserts that "an RFC assessment must be based on all relevant evidence and must address all the individual limitations associated with [her] mental impairments." [*Id.* at pg. 16] (citing 20 C.F.R. § 404.1545; SSR 96-8p; SSR 85-16). Moreover, although "[t]he ALJ found

that [she] had moderate limitations in [CPP]," Jarrell claims that Kleber failed to address "any [of her] functional limitations in the area of [CPP]" because she does not discuss any "appropriate examples" of Jarrell's limitations in the RFC. [*Id.* at pgs. 16–18] (citing 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00(E)(4)).

1.

As a preliminary matter, SSR 85-15 is not applicable in this case. SSR 85-15's stated purpose is to "provide a framework for decisions concerning persons who have *only* a nonexertional limitation(s) of function." SSR 85-15 (emphasis added). SSR 85-15, therefore, does not provide guidance where a claimant "has both exertional and nonexertional limitations."[5] *See Doneworth v. Shalala*, No. 94-4290, 1996 WL 26922, at *4 (6th Cir. Jan. 23, 1996) (citing *Roberts v. Shalala*, 66 F.3d 179, 183 (9th Cir. 1995) (finding SSR 85-15 inapplicable where claimant alleged disability based on both physical and mental impairments). Here, Jarrell asserts that she suffers from anxiety and moderate major depressive disorder, [*see* R. 13 at pgs. 6–8], mental impairments which are clearly nonexertional in nature. *See* SSR 96-9p. However, Jarrell also asserts that she suffers from a history of knee and back pain, [*see* R. 13 at pgs. 9–13], physical impairments which are clearly exertional in nature. *See* SSR 96-9p. Accordingly, because Jarrell asserts both exertional and nonexertional impairments, SSR 85-15 is not instructive.

SSR 96-8p requires an ALJ to "assess an individual's limitations and restrictions from mental impairment(s) in the 'paragraph B' and 'paragraph C' criteria of the adult mental disorders

---

[5] SSR 85-15 delineates the difference between "exertional" and "nonexertional" impairments. An "exertional limitation," originally defined in SSR 85-10 and incorporated into SSR 85-15, is "[a]n impairment-caused limitation which affects [a person's] capability to perform an exertional activity. SSR 85-10. An "exertional activity is defined as "[o]ne of the primary strength activities (sitting, standing, walking, lifting, carrying, pushing, and pulling) defining a level of work." *Id.* A "nonexertional limitation," on the other hand" is "one which is medically determinable and causes a nonexertional limitation of function . . . [which] may or may not affect a person's capacity to carry out the primary strength requirements of jobs, and they may or may not significantly narrow the range of work a person can do." SSR 85-15.

listings" considered at Step 3. SSR 96-8p. Notably, an ALJ's Step Three findings are not deemed an RFC finding. Rather, a claimant's RFC is determined at Step Four, which "'requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C' of the Listings to be considered at Step Three." *Wood v. Comm'r of Soc. Sec.*, No. 19-1560, 2020 WL 618536, at *3 (6th Cir. Jan 31, 2020) (quoting SSR 96-8p). Thus, an ALJ's failure to include a finding of moderate limitations at Step Three in their RFC findings in Steps Four or Five is not error unless the ALJ's assessment at Step Four or Five is not supported by substantial evidence. *See id.* at *2–4 (finding no error where, despite ALJ's failure to include Step Three findings in the claimant's RFC, ALJ "specifically stated" that they considered those limitations in their analysis and determination was otherwise supported by substantial evidence); *see also Doornbos v. Comm'r of Soc. Sec.*, No. 17-1464, 2017 WL 8948744, at *6 (6th Cir. Dec. 13, 2017); *Miller v. O'Malley*, No. 5:23-CV-209-HAI, 2024 WL 315685, at *7 (E.D. Ky. Jan. 26, 2024) ("In drafting the RFC, the ALJ is required to consider a claimant's non-severe mental health limitations but is not required to inevitably incorporate them in the RFC.").

Here, ALJ Kleber determined that Jarrell has the following limitations: a mild limitation in understanding, remembering, or applying information; a moderate limitation in interacting with others; a moderate limitation in adapting or managing oneself; and a moderate limitation in CPP. [R. 12 at pg. 28]. Based on these limitations, Kleber determined that Jarrell had the RFC to perform medium work.[6] In formulating Jarrell's RFC, Kleber stated that she considered the Step Three limitations. [*See* R. 12 at pg. 29]. Thus, Kleber's failure to incorporate all of her Step Three findings in Jarrell's RFC or use "more appropriate examples" of Jarrell's mental limitations, [R.

---

[6] Medium work is that which "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c). The regulation further clarifies that "[i]f someone can do medium work, we determine that he or she can also do sedentary and light work." *Id.*

13 at pgs. 16–17] (citing POMS, §§ DI 25020.010(2), 34001.032), is error *only* if ALJ Kleber's RFC determination is not supported by substantial evidence.[7]

2.

Jarrell also contends that the RFC does not account for her moderate limitation in CPP based on her objection to testimony from vocational expert Dr. Ronald Smith ("VE Smith" or "Smith"). [R. 13 at pgs. 18–19].

First, Jarrell relies on *Hicks* to contend that the RFC fails to account for her moderate limitations in CPP because "simply limiting a Plaintiff to 'simple routine tasks' [in the hypothetical posed by the ALJ] may, in some instances, fail to capture a Plaintiff's moderate limitation in [CPP] because the difficulty of a task is not equivalent to the difficulty of staying on task." [R. 13 at pgs. 17–18] (quoting *Hicks v. Comm'r of Soc. Sec.*, No. 10-CV-13643, 2011 WL 6000714, at *7 (E.D. Mich. Aug. 30, 2011)). However, this matter is readily distinguishable from *Hicks*.

In *Hicks*, the court assigned error to the ALJ's hypothetical question regarding the claimant's moderate limitations in CPP where "*no physician* opined that Plaintiff has moderate difficulties in CPP . . . but the ALJ nonetheless determined . . . that Plaintiff has moderate [limitations]." *Hicks*, 2011 WL 6000714, at *7 (emphasis added). Here, ALJ Kleber's RFC determination was supported by evaluations from other medical professionals who likewise determined that she had moderate limitations. [*See* R. 12 at pgs. 31–32]. Kleber—who found those evaluations "consistent with and supported by the evidence of record . . . relating to [Jarrell's] mental status"—then incorporated those limitations into her RFC and hypothetical question to VE Smith. [*See* R. 12 at pgs. 31, 56–58]. Therefore, *Hicks* is not controlling, and because the record reflects that Kleber's hypothetical question to VE Smith incorporated all credible functional

---

[7] Whether Kleber's RFC determination is supported by substantial evidence will be taken up in Part B.3 below.

limitations, Jarrell's argument must fail. *See Smith-Johnson v. Comm'r of Soc. Sec.*, 579 Fed.App'x 426, 436 (6th Cir. 2014) (citing *Casey v. Sec'y of Health & Hum. Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact.")).

Second, Jarrell points to part of VE Smith's testimony which, she contends, demonstrates that there are no jobs in the national economy she could perform given her limitations in CPP. [R. 13 at pgs. 17–19]. During Jarrell's hearing before the ALJ, Smith was asked the extent to which a worker can be off task. [R. 12 at pg. 63]. Remarking on the difficulty in answering such a question given its contingence on the type of job and employer, Smith opined that a "general rule" is that a worker could be off task "no more than 5 percent of the day." [R. 12 at pg. 63]. Jarrell notes that 5 percent of the workday equates to "a mere 24 minutes" of time off task and thus contends that Smith's testimony demonstrates that there are no jobs in the national economy which she could perform given her moderate limitations in CPP. [*Id.* at pgs. 18–19] (citing *Green v. Comm'r of Soc. Sec.*, Civil No. 08-CV-11398-DT, 2009 WL 2365557, at *10 (E.D. Mich. July 28, 2009) (noting that "[i]t is difficult to reasonably accept [a] 'moderate' [limitation] meaning anything less than [drifting off task] 20-30% of the time at work")). Accordingly, she argues that this testimony shows that Kleber failed to properly consider this testimony in determining her RFC because, "[c]ertainly, a moderate limitation amounts to more than 5 percent of a workday." [*Id.* at pg. 19].

Putting aside for a moment the fact that "moderate impairments are not quantified in the regulations," *Helper v. Kijakazi*, No. 21-1130-TMP, 2022 WL 1568742, at *5 (W.D. Tenn. May 18, 2022) (citing *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 698–699 (7th Cir. 2016)), Jarrell's argument here relies solely on her own subjective complaints which are otherwise unsupported by

any evidence in the medical record. Indeed, when asked the basis for the hypothetical posed to VE Smith, Jarrell's counsel admitted that his question was based solely on Jarrell's earlier testimony and lacked any other evidentiary basis in the medical record. [*See* R. 12 at pgs. 67–68]. Consequently, Kleber was not required to "credit subjective complaints where there is no underlying medical evidence for the complaint." *Williamson v. Comm'r of Soc. Sec.*, 55 Fed.Appx 287, 288–89 (6th Cir. 2003) (citing *Fraley v. Sec'y of Health & Hum. Servs.*, 733 F.2d 437, 440 (6th Cir. 1984)). Moreover, "[w]hen there are discrepancies between the claimant's testimony and the written record, the reviewing court does not substitute its opinion for that of the ALJ." *Id.* at 289 (citing *Gooch v. Sec'y of Health & Hum. Servs.*, 833 F.2d 589, 592 (6th Cir. 1987)). Thus, because Kleber was not required to credit Jarrell's subjective complaints for which she offered no objective medical evidence, this Court will not substitute its own opinion for that of ALJ Kleber. Jarrell's argument, accordingly, fails.

**B.**

Jarrell next asserts that ALJ Kleber's determination of her mental and physical RFC is not supported by substantial evidence. [R. 13 at pgs. 15–25]. An RFC determination, which is "expressly reserved for the Commissioner," *Ford v. Comm'r of Soc. Sec.*, 114 Fed.App'x 194, 198 (6th Cir. 2004) (citing 20 C.F.R. §§ 404.1527(e)(2), 404.1546), will be upheld if it is supported by substantial evidence. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405–06 (6th Cir. 2009). As noted above, substantial evidence is "more than a mere scintilla" and may be found where "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" exists. *Biestek*, 587 U.S. at 103. In determining a claimant's RFC, the ALJ must "evaluate[] all relevant medical and other evidence and consider[] what weight to assign to treating, consultative,

and examining physicians' opinions." *Eslinger v. Comm'r of Soc. Sec.*, 476 Fed.Appx. 618, 621 (6th Cir. 2012) (citing 20 C.F.R. § 404.1545(a)(3)).

With these principles in mind, the Court will examine each of Jarrell's arguments in turn.

1.

Jarrell first argues that Kleber's finding that she remained capable of medium exertional employment was in error because her impairments inhibit her from performing medium work as defined in SSR 83-10 and SSR 83-14. [R. 13 at pgs. 19–20]. In defining medium work, SSR 83-10 states that "[t]he considerable lifting required for the full range of medium work usually requires frequent bending-stooping." SSR 83-10. Moreover, SSR 83-14 clarifies that, "to perform the full range of medium work as defined, a person must be able to do both frequent stooping and frequent crouching." SSR 83-14. In light of these definitions, Jarrell thus contends that her medium work RFC determination is not supported by substantial evidence given the inconsistencies between these definitions and her medical records.[8] [R. 13 at pgs. 19–23].

But no inconsistency between Kleber's RFC determination and Jarrell's medical records exists. As indicated above, the definitions regarding medium work contemplate the physical requirements for a "full range" of medium work, which does not apply to Jarrell. Indeed, Kleber's RFC specifically states that, "[b]ased on the entirety of the record[,] I find that Ms. Jarrell can perform a *reduced range* of medium work, as set forth in the [RFC]." [R. 12 at pg. 32] (emphasis added). Thus, frequent stooping and frequent crouching are not required for Jarrell's RFC. Moreover, Jarrell has "cite[d] no authority indicating that a medium RFC is inappropriate where stooping and crouching is limited." *See Winkler v. Saul*, No. 1:20-CV-622, 2022 WL 224864, at

---

[8] Specifically, Jarrell points to medical records which indicate that she suffers from "dyspnea even on mild exertion, an antalgic gait, multiple rounds of various injections, moderate knee osteoarthritis resulting in the inability to squat fully, and progressive degenerative disc disease." [R. 13 at pg. 23].

*2 (W.D. Mich. Jan. 26, 2022) (citing *Free v. SSA*, 690 F. App'x 394, 395–96 (6th Cir. 2017) (denying disability benefits where the applicant could perform a "limited range of medium work" and could not perform frequent stooping)). Accordingly, Jarrell's argument must fail.

2.

Second, Jarrell takes issue with ALJ Kleber's failure to adequately address evidence regarding her antalgic gait, which she believes "would be considered significantly probative as it relates to ambulation, a crucial part of an exertional RFC evaluation." [R. 17 at pg. 6]. Kleber found persuasive the opinions of state agency medical consultants who based their evaluation of Jarrell's impairments on all of the records they had available at the time. [R. 12 at pgs. 31–32, 71–85, 87–96]. However, Jarrell subsequently provided medical records from two medical professionals which post-dated the evaluations of the state agency medical consultants. [*Id.* at pgs. 544–571]. The reports of Dr. Vinod Muniswamy, MD, and Dr. Timothy Beacham, MD, both noted that Jarrell had an antalgic gait, [*see id.* at pgs. 544–571], but Kleber does not specifically mention Jarrell's antalgic gait in the RFC. Jarrell thus contends that, because it is unclear whether the medical evidence of record regarding her antalgic gait was either not credited by Kleber or simply ignored, Kleber's "failure to resolve the conflict between the opinion evidence of record regarding [Jarrell's] physical abilities requires that this matter be remanded." [R. 17 at pg. 6].

Jarrell relies on *Morris* which, she contends, stands for the proposition that an ALJ must "articulate reasons for crediting or rejecting particular sources of evidence." *Morris v. Sec'y of Health & Hum. Servs.*, No. 86-5875, 1988 WL 34109, at *2 (6th Cir. April 18, 1988). However, the *Morris* court went on to "emphasize that we do not require a written evaluation of every piece of testimony and evidence submitted." *Id.* Rather, all that is required is "a minimal level of articulation of the ALJ's assessment of the evidence." *Id.*; *see also Rottmann v. Comm'r of Soc.*

*Sec.*, 817 Fed.Appx 192, 195–96 (6th Cir. 2020) (*citing Loral Def. Sys.-Akron v. NLRB*, 200 F.3d 436, 453 (6th Cir. 1999) ("An ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make 'explicit credibility findings' as to each bit of conflicting testimony, so long as his factual findings as a whole show that he 'implicitly resolve[d] such conflicts.") (citation omitted)).

Here, Kleber's analysis indicates that she did review the record—including evidence that Jarrell had an antalgic gait—when making the RFC determination such that there has been a minimal level of articulation of how she assessed the evidence. [*See* R. 12 at pgs. 31, 551–571] (citing to Exhibit 7F as evidence for the RFC determination, which contains medical reports noting that Jarrell suffers from antalgic gait). Thus, Kleber's decision was not error simply because she failed to expressly reference every piece of evidence in the record.

Jarrell also asserts that, because the opinions of the state agency medical consultants did not consider any records which evidenced her antalgic gait, Kleber erred in finding their opinion persuasive. [R. 12 at pgs. 20–21]. But an ALJ does not err by "rely[ing] on medical opinions from physicians who have not viewed the entire record so long as the ALJ considers the post-dated evidence in formulating her opinion." *Edwards v. Comm'r of Soc. Sec.*, No. 1:17-CV-925, 2018 WL 4206920, at *6 (N.D. Ohio Sept. 4, 2018) (citing *McGrew v. Comm'r of Soc. Sec.*, 343 F.App'x. 26, 32 (6th Cir. 2009)). Although Kleber did find persuasive and rely on the opinions of medical experts who had not considered the reports of Dr. Muniswamy and Dr. Beacham, she considered their respective reports in her analysis. [*See* R. 12 at pgs. 31–32]. And while Jarrell argues that Kleber's consideration of the post-dated evidence was insufficient, [*see* R. 15 at pgs. 4–6], it is not for this Court to second guess the ALJ's determination where it is otherwise supported by sufficient evidence. *See Ulman*, 693 F.3d at 713. Accordingly, because Kleber

considered evidence post-dating that evidence which the state agency medical consultants considered, her reliance on those consultants' opinions was not error.

3.

Finally, Jarrell objects to Kleber's failure to give the medical opinions of Dr. Kincaid sufficient weight in making her RFC determination. [R. 13 at pgs. 23–25]. When evaluating the persuasiveness of medical opinions and prior administrative medical findings, an ALJ may not give any singular physician's opinion special deference. 20 C.F.R. § 404.1520c(a). Rather, an ALJ must consider several factors: "the opinion's supportability and consistency; the treating source's relationship with the claimant and specialization; and other factors, such as the medical source's familiarity with other evidence relevant to the claim." *Sallaz v. Comm'r of Soc. Sec.*, No. 23-3825, 2024 WL 2955645, at *5 (6th Cir. June 12, 2024) (citing 20 C.F.R. § 404.1520(c)). Of these factors, an ALJ is only required to articulate how they considered those which are the "most important factors": supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). "Supportability evaluates how well 'the objective medical evidence and supporting explanations presented by a medical source' support a medical opinion," while "[c]onsistency evaluates whether the medical opinion is consistent 'with the evidence from other medical sources and nonmedical sources.'" *Sallaz*, 2024 WL 2955645, at *5 (citing 20 C.F.R. §§ 404.1520(c)(1)-(2)).

On June 30, 2021, Jarrell saw Dr. Kincaid, at the request of the state agency, for a consultative examination regarding her mental health impairments. [R. 12 at pgs. 543–46]. She determined that Jarrell had a moderate limitation in "understanding, retaining, and following simple instructions, as evidenced by the difficulty she had with the delayed memory task." [*Id.* at pg. 546]. Relevantly, Dr. Kincaid also concluded that Jarrell had marked limitations in: (1) "sustaining concentration and persisting to complete tasks in a normal time, as evidenced by the

difficulty she had with the serial 7's task"; and (2) "adapting and responding to the pressures of normal day-to-day work activities (as related to her mental health), as demonstrated by the duration of her mental health issues, her tendency to become overwhelmed easily, and her limited work history in recent years."[9] [*Id.* at pg. 546]. ALJ Kleber considered Dr. Kincaid's opinions, but ultimately deemed them unpersuasive. [R. 12 at pg. 32]. Specifically, Kleber noted that Dr. Kincaid's opinion:

> is not consistent with or supported by the evidence of record, particularly this examiner's own observations regarding Ms. Jarrell's memory, fund of information, capacity to calculate and capacity for abstract reasoning. In fact, it appears that the basis for Dr. Kincaid's marked limitation in the area of concentration related to Ms. Jarrell's difficulty while performing serial 7's in the exam, which seems insufficient to get to t[o] [a] marked level of impairment. Moreover, the marked limitation in adapting to stress secondary to the duration of her mental health issues is not supported as Ms. Jarrell's allegations of having a tendency to become overwhelmed with a limited work history in recent years is not necessarily tracked to her anxiety.

[*Id.*].

In this case, substantial evidence supports ALJ Kleber's decision to not accord Dr. Kincaid's opinion controlling weight because her assessment was not consistent with other substantial evidence in the record. Indeed, Kleber examined the record and found no other medical opinion which found Jarrell to have limitations to the degree indicated by Dr. Kincaid. [*Id.*]. Notably, Jarrell's prior examinations indicated that she was generally alert and oriented, maintained intact insight and judgment, and possessed logical thought processes. [*See id.* at pg. 28]. Kleber also found that, during the hearing, Jarrell was able to "maintain[] her testimony to relevant subject matter without the need for redirection" and "testified without any emotional outbursts or signs of verbal aggression." [*Id.*]. The opinion of Dr. Kincaid thus runs contrary to the medical evidence of record regarding Jarrell's mental impairments, and Kleber did not err in

---

[9] Dr. Kincaid also concluded that Jarrell had a "marked impairment in maintaining social interaction with supervisors, friends, and the general public due to her anxiety around others." [R. 12 at pg. 546]. But Jarrell does not make any challenge to her benefits determination regarding this limitation, so it will not be addressed.

discounting her opinion because she may discount medical opinions which run contrary to the weight of the medical record. *See Nasser v. Comm'r of Soc. Sec.*, No. 22-1293, 2022 WL 17348838, at *2 (6th Cir. Dec. 1, 2022) (first citing 20 C.F.R. § 404.1520c(c)(2); and then *Biestek*, 880 F.3d at 786) (finding that ALJ had basis to discount later opinion of medical professional where it was inconsistent with the medical record). Accordingly, Kleber's decision to give the medical opinion of Dr. Kincaid no weight in her RFC determination was not erroneous.

## C.

Lastly, Jarrell contends that the ALJ erred by constructing an impermissibly vague RFC. [R. 13 at pgs. 25–27]. Specifically, Jarrell argues that her RFC effectively contained a sit/stand option which did not account for the frequency with which she must change position, nor did it account for the duration with which she can remain in either position. [R. 13 at pgs. 21–22]. SSR 96-9p states that, if a claimant is required to switch between positions during a workday, "[t]he RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing." SSR 96-9p.

In the RFC, Kleber found that Jarrell "is able to stand or walk for 60 minutes at one time, but otherwise without limitation. She is able to sit without limitation." [R. 12 at pg. 29]. Even if Jarrell's construction of this language as a sit/stand option is correct, it is not impermissibly vague because it clearly contains a specific period or duration in which Jarrell can remain standing. *Compare Prater v. Saul*, 947 F.3d 479, 481–82 (7th Cir. 2020) (finding that an RFC's sit/stand option was not impermissibly vague where it stated that the claimant "must be permitted to alternate between sitting and standing 'as needed'") *with Arnett v. Astrue*, 676 F.3d 586, 593 (7th Cir. 2012) (finding sit/stand option impermissibly vague where it stated that claimant be permitted

"to alternate between sitting and standing 'throughout the workday'"). Accordingly, the RFC was not impermissibly vague.

Jarrell also argues that this sit/stand option is inconsistent with Kleber's determination that she could perform medium work. [R. 13 at pg. 22]. But this argument is effectively asking this Court to resolve a conflict in the evidence, something it will not do. *See Ulman*, 693 F.3d at 713. Accordingly, Jarrell's argument must fail.

## CONCLUSION

Mary Jarrell appealed the Commissioner's final decision that she is not entitled to disability insurance benefits, however the ALJ's determination of Jarrell's residual functional capacity and determination of limitations is supported by substantial evidence. Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Leave to File Excess Pages Nunc Pro Tunc, [R. 16], is **GRANTED**.

**IT IS FURTHER ORDERED** that Mary Jarrell's motion to enter judgment under sentence four of 42 U.S.C. § 405(g), reversing the Agency's final decision with a remand for a rehearing, [R. 13], is **DENIED**. A separate judgment affirming the Commissioner's final decision will follow.

Signed September 30, 2024.



Signed By:
*Edward B. Atkins*
United States Magistrate Judge